UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN


| | | |
|---|---|---|
| RITA MICHELL NICHOLS, | : | |
| | : | |
|    Plaintiff | : | |
| v. | : | Case No. 15-10792 |
| | : | Hon. John Corbett O'Meara |
| ROOSEN, VARCHETTI, & OLIVIER, PLLC, | | |
| | | |
|    Defendant(s). | | |
| _____/ | | |

**PLAINTIFF'S BRIEF IN RESPONSE TO THE DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVL PROCEDURE 12(b)(6)**

     Plaintiff, Rita Michell Nichols ("Plaintiff"), by and through her attorney, the Law Offices of Nicholas A. Reyna P.C., respectfully requests that this Honorable Court grant the Plaintiff's request to deny the Defendants' request for relief, stating the following in response to the Defendants' above-referenced Motion.

                                                                 RESPECTFULLY SUBMITTED,
                                                                 LAW OFFICES OF NICHOLAS A. REYNA

Dated: May 21, 2015

                                                                 /s/ Nicholas A. Reyna
                                                                 Nicholas A. Reyna (P68328)
                                                                 Attorney for Plaintiff
                                                                17344 W. 12 Mile Rd., Ste. 106
                                                               Southfield, MI 48076
                                                                (248) 423-1110

# **INDEX OF AUTHORITIES**

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242, 250, 106 S. Ct. 2505 (1986)……………………….…..p. 9

*Ashcroft v. Iqbal*,
 556 U.S. 662, 678 (2009)……………………………………….……p. 9

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544, 556 (2007)……………………………….....…….p. 9

*Browning v. Levy*,
 283 F.3d 761, 769 (6th Cir. 2002)……………………………....p. 9

*Cacace v Lucas,*
 775 F. Supp. 502, 505 (D. Conn. 1991)……………………………...p. 8

*Celotex Corp. v. Catrett*,
 477 U.S. 317, 325, 106 S. Ct. 2548 (1986)…………………………..p. 9

*Frey v. Ganwish II,*
 970 F. 2d 1516, 1518-19 (6th Circ. 1992)……………………………p. 14

*Handy-Clay v. City of Memphis*,
 695 F.3d 531, 538 (6th Cir. 2012)…………………………………..p. 9

*Heintz v. Jenkins,*
 514 U.S. 291, 299 (1995)…………………………………………...p. 8

*Henry v. Chesapeake Appalachia*, L.L.C.,
 739 F.3d 909, 912 (6th Circ. 2014)………………………………….p. 10

*In re Banks*,
 253 B.R. 25, 30 (Bankr. E.D. Mich. 2000)…………………………….p. 11

*In re Connecticut Pizza, Inc.*,
 193 B.R. 217, 228 (Bankrt.D.MD.1996)……………………………….p. 11

*In re Daniels*,
 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997)………………………….p. 13

*In re Mitchell*,
 66 B.R. 73, 75 (Bankr.S.D. Ohio 1986)……………………………..p. 11

*In re Printup*,
 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001)………………………….p. 13

*In re Smith*,
    180 B.R. 311, 319 (Bankr. N.D.Ga. 1995)……………………………….p. 11

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
    559 U.S. 573, 587. 130 S.Ct. 1605, 1615 (2010)………………………….p. 7, 14

*Kistner v Law Offices of Michael P. Margelefsky*, LLC,
    518 F.3d 433, 433-438 (6th Cir. 2008)……………………………………….p. 8

*O'Connor v. Methodist Hospital of Jonesboro, Inc.*
    42 B.R. 390, 392 (Bankr.E.D. Ark. 1984)………………………………….p. 13

*Smith v. Transworld Sys., Inc.*,
    953 F.2d 1025, 1034 (6th Cir. 1992)……………………………………….p. 14

*Watkins v. Peterson Enterprises, Inc.*,
    57 F.Supp.2d 1102 (E.D. Wash. 1999)………………………………….p. 7

*Whittiker v. Deutsche Bank Nat. Trust Co.*,
    605 F. Supp.2d 914, 938-939 (N.D. Ohio 2009)…………………………..p. 11

**FEDERAL STATUTE**

15 U.S.C. §1692e(2)(A)……………………………………………………………….p. 7

15 U.S.C. § 1692e(10)……………………………………………………..…………...p. 7

15 U.S.C. § 1692f(1)………………………………………………………………….p. 7

15 U.S.C. § 1692k(a)(1)……………………………………………………………….p. 15

15 U.S.C. § 1692k(a)(2)(A)……………………………………………………………p. 15

15 U.S.C. § 1692k(a)(3)……………………………………………………………….p. 15

15 U.S.C. § 1692k(c)……………………………………………………..…………….p. 14

**FEDERAL COURT RULES**

Fed. R.Civ.P. 8(a)(2)………………………………………………………………..p. 9

Fed. R. Civ. P. 12(b)(6)……………………………………………………………….p. 1, 9, 15

Fed. R. Civ. P. 56(c)………………………………………………………………….p. 8

**STATE STATUTE**

M.C.L. § 339.901………………………………………………..…………………..…p.4

M.C.L. § 445.251………………………………………………………………..……..p.4

3

**STATE COURT RULES**

MCR 2.603(a)(1)……………………………………………………………………………….p. 6

MCR 3.101……………………………………………………………………………………..p. 7

## INTRODUCTION

1. Plaintiff brought this action against the Defendant debt collectors, seeking damages and equitable relief, to redress the Defendants' systemic violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* violations of the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251 *et seq*, and the Michigan Occupational Code, M.C.L. § 339.901 ("MOC"). For the reasons to be discussed, the Defendants motion to dismiss must be denied.

## FACTS

2. On or around August 8, 2002, Automotive Credit Corporation filed a civil lawsuit against the Plaintiff in the 22nd Judicial District Court of Michigan (case number 022091GC); judgment was ultimately rendered in favor of Automotive Credit Corporation on October 31, 2002. At all times relevant to the referenced litigation, Automotive Credit Corporation was represented by the Defendant in this matter, specifically attorney Lynn Oliver (P39006).

3. The Debt owed to Automotive Credit Corporation was for a vehicle loan, which was used for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C 1692a(5).

4. On March 19, 2013, the Plaintiff filed a Chapter 7 bankruptcy case in the Eastern District of Michigan (case number 13-45449-pjs). Both Automotive Credit Corporation and the Defendant were separately listed on the Debtor's Schedule F- List of Creditors, and both entities received actual notice of the Plaintiff's bankruptcy filing by mail as a result around that time.

5. On April 1, 2013, a Garnishment Release specific to the underlying case was processed and mailed to the State of Michigan Department of Treasury, but was not directed to the Plaintiff's employer despite her wages having been previously garnished.

6. The Plaintiff's Chapter 7 bankruptcy case was ultimately discharged on June 25, 2013. A notice of the Plaintiff's bankruptcy discharge was subsequently mailed to all of the Plaintiff's creditors who had been included on the Plaintiff's filed creditor matrix, specifically including Automotive Credit Corporation and the Defendant. No discernible effort was made by the Defendants to ensure the case against the Plaintiff was thereafter closed.

7. Thereafter, the Plaintiff was illicitly garnished by the Defendants on three separate occasions in December, 2013 and January, 2014 pursuant to the above-referenced civil judgment; after being informed of their violation, the Defendants returned two separate checks dated January 9, 2014 for $127.99 and February 5, 2014 for $117.12 to the Plaintiff for the amounts it had illegally garnished from her wages. Despite having executed this illicit garnishment against the Plaintiff, the Defendants took no action at that time to close out the underlying case and/or have a garnishment release issued to prevent further garnishment activity in the future.

8. On or around November 20, 2014, the Defendants purposefully executed a Request and Writ of Garnishment against a similarly-named party to the Plaintiff (*see Exhibit A*). This garnishment was subsequently forwarded to the payroll department of the Plaintiff, despite the Defendants' knowledge of her prior bankruptcy discharge and the prior instances of illicit garnishment executed against the Plaintiff by the Defendants, to say nothing of the fact that the Defendants were already in possession of the Plaintiff's correct payroll information due to the previous garnishment. This appears to be part of a "cover all bases" approach whereby the

Defendants simply forwards writs of garnishment to the employers for any parties subject to a lawsuit with similar names   Regardless, any failure on the part of the payroll department of the Plaintiff thereafter to not garnish the wages of the Plaintiff as directed would serve as a violation of MCR 2.603(a)(1) for which the employer could have ultimately been left responsible for repayment in full upon the judgment at issue. The intentional, knowing issuance of this garnishment to her payroll and all the subsequent acts taken thereafter to garnish the Plaintiff's wages represented a concerted effort by the Defendants to place undue pressure upon the Plaintiff's employer to garnish her wages, such representing multiple violations of the Fair Debt Collection Practices Act as set forth below.

      9.  Despite the notice of the Plaintiff's discharge, which it had previously received upon its' issuance and thereafter again after illegally garnishing her wages post-discharge, the Defendant nevertheless again allowed a garnishment to proceed against the Plaintiff in December, 2014, ultimately returning the garnished amount totaling $212.98 via check to the Plaintiff only after her bankruptcy counsel sent prompt notice of same to the Defendant with a request to cease the garnishment at once as it had been instituted in clear contravention of 11 U.S.C. § 524.  As a result, the Plaintiff was willfully and illegally garnished on *three separate occasions*, the prior notice received by the Defendant and multiple violations committed thereafter obviously preventing any implication of unintentional conduct on its' part.

      10. A Register of Actions supplied by the Defendants with their motion confirms that no effort was made by the Defendants following the notice they received of both the Plaintiff's bankruptcy filing and subsequent discharge to issue a garnishment release to anyone aside from the State of Michigan Department of Treasury or otherwise undo the existing garnishment action against the Plaintiff.

11. The Fair Debt Collection Practices Act ("FDCPA") is a consumer protection statute that "imposes open-ended prohibitions on false, deceptive, or unfair debt collection practices." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587. 130 S.Ct. 1605, 1615 (2010).

12. The Fair Debt Collection Practices Act states that it is unlawful for a debt collector to use any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e.

13. The FDCPA states that it is unlawful for a debt collector to make a false representation of the character, amount, or legal status of any debt. 15 U.S.C. §1692e(2)(A).

14. The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

15. The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt, including the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f(1).

16. By failing to close their case against the Plaintiff and/or release the garnishment against (M.C.R. 3.101) her upon learning of her bankruptcy discharge, the Plaintiffs falsely and deceptively allowed her payroll department to operate under the impression a garnishment case remained against her, a misrepresentation of the legal status of the debt which allowed illicit collection against her; as a result. the Defendants violated the FDCPA, 15 U.S.C. §§ 1692e and 1692e(2)(A), and (10), and 1692f(1). See, e.g., *Watkins v. Peterson Enterprises, Inc*., 57

F.Supp.2d 1102 (E.D. Wash. 1999).

17. The FDCPA is a strict liability statute and thus proof of <u>one</u> violation thereof is sufficient to support a finding of summary judgment in favor of a Plaintiff. *Cacace v Lucas,* 775 F. Supp. 502, 505 (D. Conn. 1991). Moreover, a plaintiff in such instances does not need to prove knowledge or intent. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011). The Plaintiff also does not have to have suffered actual damages. *Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 437 (6th Cir. 2008).

18. Courts have established that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when the activity consists of litigation. *Heintz v. Jenkins,* 514 U.S. 291, 299 (1995).

19. The described acts and omissions of the Defendant were done in connection with efforts to collect an alleged debt from the Plaintiff, such having been done intentionally and willfully. The Defendants intentionally and willfully violated the FDCPA

20. As a direct and proximate result of the Defendant's negligence, the Plaintiff suffered actual damages in the form of anger, anxiety, emotional distress, frustration, upset, and embarrassment.

21. As a further direct and proximate result of the Defendant's negligence, the Plaintiff has sustained consequential damages, including attorney fees and legal expenses.

**STANDARD OF REVIEW**

22. Summary judgment is to be granted under Federal Rule of Civil Procedure 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Under this standard, the court is not to "weigh

8

the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002).

23. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its' face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court construes the originating complaint in the light most favorable to the Plaintiff, and draws all reasonable inferences in the Plaintiff's favor. *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012).

24. The moving party has the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). Only if that burden is met must the nonmoving party then produce evidence that would support a finding in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505 (1986). It is important to highlight that the Defendants to this point have made no effort to rebut the majority of arguments put forth in the Plaintiff's complaint, and have instead seemingly decided to rely solely upon the idea that a failure to act on their part is inactionable under the FDCPA, an argument this Court must reject for the reasons to be stated below.

25. A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The plausibility standard is not equivalent to a probability requirement. *Id* at 556.

26. In addition, Fed. R.Civ.P. 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." By extension, the subsequent analysis undertaken by courts in such instances "rests primarily upon the allegations of the complaint, but

matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account." *Henry v. Chesapeake Appalachia*, L.L.C., 739 F.3d 909, 912 (6th Circ. 2014).

## LAW AND ANALYSIS

### The Defendants Have Not Provided a Valid Basis for Dismissal Pursuant to FRCP 12(b)(6) as Plaintiff has Clearly Set Forth a Valid Claim Upon Which Relief can be Granted Under 15 U.S.C. § 1692e

27. Much of the Defendants' motion and the defense put forth therein revolves largely around the idea that debt collectors like the Defendants cannot be held liable under the FDCPA for a garnishee-defendant's purported error in responding to an expired writ. The Defendants specifically posit that the Plaintiff's employer in fact randomly withheld money from her paycheck pursuant to an expired writ originally executed in favor of the Defendants and their client, and that no overt effort was made by the Defendants to collect on the debt at issue. The motion goes on to debate semantical positions regarding how terms such as "use" are to be defined, a type of clear obfuscation that lends nothing to the proceedings, and otherwise offering obvious misstatements of the law such as the idea that "the FDCPA requires 'active involvement' in order to state a claim for a violation."

28. The Defendants' argument as set forth in their Motion to Dismiss fails at an intrinsic level given the writ of garnishment issued to the Plaintiff's payroll department in November, 2014, such obviously and clearly constituting an overt attempt by the Defendants to collect a debt from the Plaintiff which it was not entitled to do given the Plaintiff's bankruptcy discharge. Any confusion evinced within the Plaintiff's payroll department was wholly the result of this illicit action by the Defendants. The subsequent effort to garnish the Plaintiff represented a

patently unconscionable, deceptive attempt to collect an amount the Defendants was not legally entitled to in direct contravention of the Fair Debt Collection Practices Act as set forth above.

29. Aside from the foregoing, it is in addition a fallacy as the Defendants suggest that the FDCPA requires overt action in order for a violation to be found, as indeed multiple references are made throughout the Act, most specifically when discussing civil liability under 15 U.S.C. § 1692k, that a violation can occur via either act *or* omission. Indeed, it is established that to establish a prima facie case for a violation of the FDCPA, among the various required elements, a Plaintiff must show that a Defendant "has violated by act *or* omission a provision of the FDCPA." *Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F. Supp.2d 914, 938-939 (N.D. Ohio 2009).

30. "It is incumbent upon creditors to take the necessary steps to halt or reverse any pending State Court actions or other collection efforts commenced prior to the filing of a bankruptcy petition, including garnishment of wages…and, thereby, maintain or restore the status quo as it existed at the time of the filing of the bankruptcy petition." *In re Banks*, 253 B.R. 25, 30 (Bankr. E.D. Mich. 2000). The responsibility in such instances is placed on the creditor and not the debtor." *Banks*, 253 B.R. at 30. A willful violation can be found from an act of omission and does not require an act of commission." *Banks*, 253 B.R. at 31. When a creditor receives notice of a bankruptcy filing, the burden is then on the creditor to assure that no violation occurs. *In re Smith* 180 B.R. 311, 319 (Bankr. ND.Ga 1995). "If one is enjoined from continuing a judicial proceeding against the debtor, one is obliged to discontinue it." *In re Mitchell*, 66 B.R. 73, 35 (Bankr.S.D.Ohio 1986). In fact, a refusal or even mere unintentional failure to take overt action may constitute an FDCPA violation, as courts have found violations based on an act of *omission* when a creditor fails to "restore the status quo." *In re Connecticut*

*Pizza, Inc*., 193 B.R. 217, 228 (Bankrt.D.MD.1996).

31. Simply put, the Defendants are either unaware of the legal standard in these situations or by way of their motion have sought to mislead this court as to what that legal standard is in fact. The Defendants argue they failed to take any overt action to collect upon the Plaintiff after receiving multiple notices both of the Plaintiff's bankruptcy discharge, but it is likewise true that they also took no action to undo the existing wage garnishment against the Plaintiff, most specifically by filing the necessary Release of Garnishment which invariably would have been ultimately received by the Plaintiff's employer and thus likely prevent this situation from occurring in the first place, or otherwise ensuring the case against the Plaintiff was closed permanently. Any action of the Plaintiff's payroll department is immaterial given the intentional serving of the Writ of Garnishment by Defendants in this regard, which is the only reason the garnishment ultimately occurred. Indeed, given the writ of garnishment issued to the Plaintiff's payroll by the Defendants in November 2014, even their argument that no overt action was taken is rendered effectively invalid.

32. It is important to again highlight the legal standard here- mere omission (rather than the "active involvement" which the Defendants erroneously claim is a necessity) is an actionable violation of the FDCPA "when a creditor fails to cure a previous violation of the stay *or otherwise restore the status quo*." Upon receiving notice of both the Plaintiff's original bankruptcy discharge, the Defendants were under an affirmative duty to "restore the status quo" by securing a garnishment release and otherwise ensuring any potential action to collect upon the Plaintiff specific thereto was ceased immediately and in perpetuity. Their failure to do so, however innocent that mistake may have been, constitutes a willful violation under the FDCPA.

33. "At whatever stage the garnishment is, the creditor's attorney must do everything he

can to halt the proceeding." *O'Connor v. Methodist Hospital of Jonesboro, Inc*. 42 B.R. 390, 392 (Bankr.E.D. Ark. 1984). Again, the Defendants in fact did nothing, and this failure along with the Defendants' subsequent acceptance (however temporary) of funds from the Plaintiff's employer violated the discharge injunction in effect against them even if they took no further action to enforce the garnishment after learning of the Plaintiff's bankruptcy filing.

34. To find an FDCPA violation, "it is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct…moreover, where there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional." *In re Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997). The Defendants similarly seem intent on suggesting that merely sitting back and doing nothing upon learning of the Plaintiff's bankruptcy filing and discharge leaves them thusly immune from liability under the FDCPA, a conclusion obviously lacking any sort of legal or even rational basis. Indeed, failing to do something which they were required to do and allowing even inadvertent collection to proceed against the Plaintiff is as egregious as taking an overt action to collect; the fact is, the Defendants clearly knew of the Plaintiff's filing and then intentionally failed to again return the parties to a position of "status quo." As a collection firm likely responsible for thousands of similar cases, the Defendants were clearly aware of what one likely outcome might be if they made no over effort to notify the Plaintiff's employer that the case against her was no longer to be enforced or simply close the case against the Plaintiff- she could be garnished, whether purposefully or inadvertently. Their omission was a knowing, deliberate failure, and given the strict liability standard in these instances, there is nothing more to prove on the part of the Plaintiff other than damages.

35. "A violation is willful if the creditor deliberately carried out the prohibited act with knowledge of the debtor's bankruptcy case." *In re Printup*, 264 B.R. 169, 173 (Bankr. E.D.

Tenn. 2001). There is no doubt in this instance that the Defendants received multiple notices of both the Plaintiff's filing and discharge, and their subsequent failure to restore the "status quo" and undo the civil case previously instituted against the Plaintiff constitutes a willful violation of the FDCPA.

36. Furthermore, the Sixth Circuit is clear- where a "mistake" of this type is "an error in legal judgment, it could not be erased by 1692k(c), because the Sixth Circuit treats the FDCPA as a strict liability statute. *Frey v. Ganwish II,* 970 F. 2d 1516, 1518-19 (6th Circ. 1992). Further, the Sixth Circuit has explicitly held that the "bona fide error defense applies only to clerical errors." *Smith v. Transworld Sys., Inc.,* 953 F.2d 1025, 1034 (6th Cir. 1992). The Supreme Court has additionally held that the bona fide error defense in 1692k(c) does not apply to a violation resulting from a debt collector's mistaken interpretation of the legal requirements of the FDCPA. *Jerman V. Carlisle, McNellie, rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1634-35 (2010). Having first intentionally and purposefully directing the writ of garnishment to the Plaintiff's employer, and thereafter receiving notice of the Plaintiff's bankruptcy filing and discharge, the Defendants were thusly under an affirmative duty to issue a garnishment release and otherwise ensure Plaintiff's employer was made aware that the underlying case against the Plaintiff had been dissolved due to her bankruptcy filing and the garnishment released as a result. In fact, a return to the Plaintiff's "status quo" would have required the Defendants take some overt measure to close the case against the Plaintiff upon learning of her discharge, which they demonstrably failed to do. Any argument that they were simply unaware of this legal requirement and that their failure was mere bona fide error necessarily fails as a result of established legal precedent.

37. As a result of the foregoing, the Defendants have failed to adequately defeat the

Plaintiff's valid claim against them for their various and consistent violations of 15 U.S.C. 1692e in full, and their request for dismissal pursuant to FRCP 12(b)(6) must be rejected as a result.

38. As a result of the Defendants' violations of the FDCPA, the Plaintiff is specifically entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Defendants.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Honorable Court reject the Defendants' motion to dismiss the Plaintiff's complaint and otherwise grant such other relief as this Court deems appropriate.

RESPECTFULLY SUBMITTED,
LAW OFFICES OF NICHOLAS A. REYNA

/s/ Nicholas A. Reyna                                        May 21, 2015
Nicholas A. Reyna (P68328)
Attorney for Plaintiff
17344 W. 12 Mile Rd., Ste. 106
Southfield, MI 48076
(248) 423-1110
Nickreyna7@hotmail.com

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN


RITA MICHELL NICHOLS,                        :
                                             :
    Plaintiff                                :
v.                                           : Case No. 5:15-cv-10792
                                             : Hon. John Corbett O'Meara
ROOSEN, VARCHETTI, & OLIVIER, PLLC,

    Defendant(s).
_____/

CERTIFICATE OF SERVICE


    I, Nicholas A. Reyna, being duly sworn, depose and state that on the 21st day of May, 2015, I electronically filed the foregoing papers with the Court using the ECF system which will send notification to all parties registered to receive electronic filings.


                                                 LAW OFFICES OF NICHOLAS A. REYNA PC

Date: 5/21/2015                              /s/ *Nicholas A. Reyna*
                                             Nicholas A. Reyna, P68328
                                             Attorney for Plaintiff
                                             17344 W. 12 Mile Rd., Ste. 106
                                             Southfield, MI 48076
                                             Nickreyna7@hotmail.com
                                             248-423-1110

16